FILED

08/04/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0279

DA 25-0279

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 184N

IN RE THE MARRIAGE OF:

LOREN MICHAEL HUTNICK,

      Petitioner and Appellant,

  and

MELISSA ANN HUTNICK,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                 In and For the County of Sanders, Cause No. DR 24-25
                 Honorable Molly Owen, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Loren Michael Hutnick, Self-Represented, Plains, Montana

      For Appellee:

          Ashley Hurlbert, Attorney at Law, Missoula, Montana

                       Submitted on Briefs:  February 18, 2026

                                Decided:  August 4, 2026

Filed:

                      _____
                               Clerk

Chief Justice Cory J. Swanson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Loren Michael Hutnick (Loren) appeals from the April 14, 2025 Findings of Fact, Conclusions of Law and Order for Decree of Dissolution by the Twentieth Judicial District Court, Sanders County. We affirm.

¶3 The parties, both truck drivers, married on August 13, 2017, in Clackamas County Oregon, and started H&H Heavy Haul trucking company together. In 2022, Loren quit trucking and claims he became the mechanic and president of the company while Appellee, Melissa Ann McCaw (Melissa), formerly Melissa Hutnick, kept driving truck. The parties separated, and ultimately, the marriage failed. While separated, Melissa tried to maintain H&H Heavy Haul and successfully kept payments current on all property in her possession. Loren failed to keep payments current on the property titled and financed under his former business name—which Melissa could not access—and the majority of that equipment was repossessed. While Melissa was trying to maintain the business, Loren sent emails to Melissa's customers, telling them to cease doing business with her because she was operating illegally. Additionally, Loren contacted federal authorities, trying to have Melissa's International Fuel Tax Agreement (IFTA) license revoked. Loren's interference

necessitated Melissa's hiring of a registered agent to resolve the IFTA license issues. Loren also continued to access the business bank account in violation of the District Court's order and changed the address on the account, preventing Melissa from receiving statements. Melissa received a loan for approximately $40,000 from her father to pay living expenses and attorney's fees due to Loren's continued interference with her ability to earn a living.

¶4 Melissa owned a home prior to the marriage. The home was sold and $30,000 of the proceeds were used to purchase a portion of a 5th wheel camper in Montana which became the parties' marital home. Some of the proceeds from the sale were also used to purchase a 40-foot sea container as a storage unit for Melissa's property from her prior home. Melissa continued making payments on the 5th wheel, which was titled in both parties' names, until the parties separated. Loren remained living in the 5th wheel at the yard the parties were renting in Plains, Montana. Melissa was unable to continue working with the loan company after the separation, because the loan for the 5th wheel was solely in Loren's name. Loren failed to make payments, and a repossession company is attempting to collect the property.

¶5 Loren filed a petition for dissolution of marriage on May 24, 2024. That same day, the District Court issued a Summons and Temporary Economic Restraining Order. On July 3, 2024, Melissa filed a Petition for Temporary Order of Protection in part due to an incident of violence that occurred on June 22, 2024, while Melissa was at the Plains property attempting to move her mother out of her nearby home. Following this altercation Loren was arrested and charged with Partner Family Member Assault. The District Court issued the Order of Protection five days later and ordered Loren to stay 1500 feet from

Melissa, communicate pertinent information pertaining to H&H Heavy Haul with Melissa's attorney, cease to possess firearms, and not dispose of Melissa's property.

¶6    On July 15, 2024, Loren filed a "Request for Clarification Concerning Temporary Protection Order" requesting the court clarify what property Melissa could remove from their property in Plains. On July 25, 2024, Loren filed a Motion to Amend the Economic Restraining Order requesting the court permit him to change the mailing address for H&H Heavy Haul and direct Melissa to provide him with copies of all correspondence she receives for the business. The District Court held a hearing on August 13, 2024, to address Melissa's request that the Temporary Order of Protection be converted to a Permanent Order of Protection. During this hearing the court decided Loren could stay in the 5th wheel camper in Plains, Loren was responsible for making payments on the 5th wheel, both parties must stay away from the barn style shed and the 40-foot sea container on the Plains property during the pendency of the dissolution action, and Loren was to have no access to the business account.

¶7    Loren filed a "Motion to Compel Respondent to Produce Evidentiary Proof'" following the August 13 hearing. On October 21, 2024, prior to a hearing on Loren's Motion to Compel, Melissa filed a Motion to Vacate Trial Setting and Request for Status Conference. The District Court held a hearing on October 22, 2024, where it heard testimony from both parties. On November 13, 2024, the District Court issued an Order Amending Automatic Economic Restraining Order, which allowed Melissa to "take all necessary steps to open her own business and lawfully register her log truck so that she can continue to work during the pendency of this action, without interference from [Loren]."

4

The court held a final hearing on the distribution of assets on March 13, 2025. Both parties presented testimony and exhibits. Loren made multiple objections which the court noted and ruled upon. There are no transcripts of these hearings in the record.

¶8 Loren asserts the District Court did not respond to his "Request for Clarification of Essential Property" or his Motion to Amend Economic Restraining Order, and therefore violated § 40-4-126(11), MCA. Melissa responds that the court did address Loren's request for clarification during the August 13, 2024 hearing and made changes to the Temporary Order of Protection to address his concerns. Additionally, Melissa asserts the court addressed Loren's Motion to Amend Economic Restraining Order at the same hearing and ruled on the motion from the bench.

¶9 We review discretionary trial court rulings for abuse of discretion. *In re Johnson*, 2011 MT 255, ¶ 12, 362 Mont. 236, 262 P.3d 1105. Loren's arguments as to the District Court's alleged abuse of discretion depend almost entirely on what occurred during the proceedings of the August 13, 2024, and October 22, 2024 hearings. However, there are no transcripts available to determine the District Court's specific discussions or rulings during these hearings.[1] Without transcripts, we cannot conclude the District Court failed to address motions, denied Loren a meaningful opportunity to be heard, or otherwise abused its discretion.

---

[1] Loren's duty as the appellant is to "present [this Court] with a record sufficient to enable it to rule upon the issues raised." M. R. App. P. 8(2). Loren does not meet his burden of demonstrating the District Court's error on appeal, which may result in affirmance based on an insufficient record under M. R. App. P. 8(2).

¶10    Loren asserts the District Court failed to take action against the Appellee for failure to comply with the July 3, 2024 pretrial order.  He explains Melissa failed to provide financial records and provided an incomplete master list of property.  Loren provided a master list of property consisting of 573 items including many disposable consumer products that were unnecessary to include.  Melissa attempted to cull this list.  Loren also argues the District Court erred when it denied his "Motion of Objection to Exhibit List, Witness List, Findings of Facts, Findings of Law."  The District Court denied Loren's motion based on its review of both parties' briefs, and arguments made during the hearing. The District Court held additional hearings where both parties offered exhibits, presented witness testimony, made objections, and prepared proposed findings for the District Court. The evidence available in the record indicates the District Court employed conscientious judgement and did not exceed the bounds of reason when it ruled on the issues discussed above.

¶11    Finally, Loren asserts the District Court erred in its Findings of Fact and Conclusions of Law.  Loren alleges—without citations to the record—the following errors: the District Court listed the wrong year in the date of marriage; the court states Loren quit trucking in 2022, when he returned to trucking in 2023 but his belly dump frame cracked and became unsafe to operate; the court stated Loren's maintenance and repairs caused a need for greater repairs, when his repairs kept the business operable; and Melissa failed to list all joint marital and joint business debts on the final order and did not make adequate financial disclosures.

¶12 A district court's division of marital property is an equitable proceeding; therefore, we review the court's findings of fact for clear error and its conclusions of law for correctness. *In re Marriage of Funk*, 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39. "A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of evidence, or if upon reviewing the record, this Court is left with the definite and firm conviction that the district court made a mistake." *In re L.H.*, 2007 MT 70, ¶ 13, 336 Mont. 405, 154 P.3d 622 (internal citations omitted). A district court has broad discretion to apportion the marital estate equitably according to the circumstances of the case. *In re Marriage of Hardman*, 2019 MT 152, ¶ 11, 396 Mont. 238, 443 P.3d 1108 (citing § 40-4-202, MCA). "Absent clearly erroneous findings, we will affirm a district court's division of property unless we identify an abuse of discretion." *Hardman*, ¶ 11 (citing *Funk*, ¶ 6). A district court abuses its discretion if it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *In re Marriage of Ash*, 2024 MT 273, ¶ 12, 419 Mont. 111, 558 P.3d 1169 (internal citations omitted). Absent clearly erroneous findings, the district court's decision must be affirmed unless there is an abuse of discretion. *In re Marriage of Estes*, 2017 MT 67, ¶ 12, 387 Mont. 113, 391 P.3d 752 (citing Funk ¶ 6).

> In apportioning the marital estate, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit.

7

*In re Marriage of Harkin*, 2000 MT 105, ¶ 20, 299 Mont. 298, 999 P.2d 969 (quoting § 40-4-202, MCA).

¶13     The District Court conducted five hearings where it listened to testimony and reviewed the evidence presented by both parties.  The District Court outlined the facts it deemed important when dividing the marital estate in its Findings of Fact and Conclusions of Law.  The District Court considered Melissa and Loren's occupation as truck drivers and Loren's new occupation as a heavy equipment operator; Loren's failure to maintain the parties' business property and failure to work while Melissa was trucking; Melissa's contributions to the business and her efforts to maintain the value of the property which she possessed; Loren's failure to make payments on the property in his possession, and the dissipation in value therefrom; Melissa's contributions to the marital home from the proceeds of her past home; Loren's attempts to prevent Melissa from earning a living; and Melissa's costs incurred as a result of Loren's interference.

¶14     There are no facts in the record to support clear error in the District Court's findings. Because Loren did not provide a transcript of the final hearing, we cannot determine whether the District Court's factual findings were unsupported by the evidence presented at trial.  Loren relies on § 40-2-104, MCA, but that statute does not control property division, nor does it limit the District Court's equitable-distribution authority under § 40-4-202, MCA.  The District Court considered the factors outlined in § 40-4-202, MCA, and without transcripts to support otherwise, we cannot find it abused its discretion when apportioning the marital estate.

¶15　Loren raises, in each of his arguments, the Montana Constitution's Due Process clause, Article II, Section 17, and Individual Dignity clause, Article II, Section 4. "Whether a person has been denied due process is a question of constitutional law, and we exercise plenary review." *In re L.V.-B.*, 2014 MT 13, ¶ 12, 373 Mont. 344, 317 P.3d 191. Loren does not set forth the framework under which this Court should analyze his constitutional claims, nor does he adequately articulate his reasoning for including them. Generally, due process protects the opportunity to be heard. *Byrd v. Columbia Falls Lions Club*, 183 Mont. 330, 332, 599 P.2d 366, 367 (1979). Mere disagreement with a district court's evidentiary rulings does not violate a party's due process rights where the party has had meaningful opportunity to be heard. The record reflects Loren had multiple opportunities to be heard over the course of the dissolution action including: making objections, filing motions, participating in hearings, and receiving rulings. Loren presents no evidence that would allow this Court to conclude he was deprived of due process or his right to individual dignity.

¶16　We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶17　Affirmed.

/S/ CORY J. SWANSON

9

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M. BIDEGARAY
/S/ INGRID GUSTAFSON
/S/ JIM RICE